**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Little Mountain Precision, LLC,** | ) | **CASE NO. 22 CV 1471** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **DR Guns, LLC,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Joint Motion of DR Guns, LLC ("DR Guns"), Rybacki Management, Inc. ("RMI"), SRW Industries, LLC ("SRW"), 500 Capital Drive LLC ("500 Cap"), SLD Real Estate Holdings LLC ("SLD"), Equipmunk Leasing LLC ("EL"), 551 Telser Road LLC ("Telser"), and Hobbit Holdings Inc. ("HH") to Dismiss the First Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)("Corporate Defendants' Motion")(Doc. 21). Also pending is the Joint Motion of Stacy Rybacki A/K/A Stacy Paras and David Rybacki to Dismiss the First Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)("Individual Defendants' Motion")(Doc. 27). This is a breach of contract case. For the reasons that follow, the Corporate

1

Defendants' Motion is GRANTED in PART and DENIED in PART. The motion is GRANTED with respect to counts two and three, and DENIED with respect to count one. The Individual Defendants' Motion is GRANTED, and they are dismissed from this lawsuit.

**FACTS**

For purposes of ruling on the pending motions, the facts in the First Amended Complaint (Doc. 17) ("complaint") are presumed true.

Plaintiff Little Mountain Precision, LLC filed this lawsuit against defendants DR Guns, RMI, SRW, 500 Cap, SLD, EL, Telser, and HH (collectively, "Corporate Defendants"). Plaintiff also named individual defendants David Rybacki and Stacy Rybacki (collectively, "Individual Defendants").

This case involves a number of agreements governing the production and sale of various gun parts. All of the agreements provide that they are between plaintiff and "DR Guns...and its subsidiaries, parent companies, and/or related companies... ("Related Entities")."

Plaintiff alleges that RMI is the common manager of DR Guns, SRW, 500 Cap, SLD, EL, and Telser. Plaintiff does not allege that RMI is the common manager of HH. According to the complaint, David Rybacki and Stacy Rybacki are both "principal[s], officer[s], manager[s], or member[s], of RMI." Both Rybackis "exercise dominion, control, and management authority over" all defendants and have actual or apparent authority to bind defendants to the agreements at issue. (Compl. ¶¶ 15-17).

During the negotiations leading up to the first agreement, plaintiff insisted that the parties to the agreement include the Related Entities in order to provide additional security in the event DR Guns defaulted. Counsel for DR Guns initially rejected the inclusion of the Related Entities

as parties and suggested that the relevant language be deleted. Despite counsel's suggestion, the Rybackis and the Related Entities "consciously chose to retain this language in the final executed version of" the agreement, as well as all future agreements. (Compl. ¶ 28). According to the complaint, the Rybackis did so in order to induce plaintiff to enter into all of the agreements at issue.

The parties amended the various agreements a number of times. Each agreement is signed by at least David Rybacki or Stacy Rybacki.[1] Plaintiff alleges that during the time of the parties' relationship, the Corporate Defendants failed to make payments under the various agreements.

Two of the agreements ("the Force Majeure Agreements") have force majeure clauses containing the following language:

> In the event that either party hereto shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of....pandemic...not the fault of the party delayed in performing the work or doing the acts required under the terms of this Agreement, then the period of performance of any such work or acts shall be extended for a period equivalent to the period of such delay. The provisions of this Section shall not operate to excuse Buyer from prompt payment of Parts sold and delivered, or any other payments required by the terms of this Agreement.

Plaintiff alleges that the COVID pandemic occurred during the parties' relationship and, pursuant to the force majeure clauses, plaintiff's performance was tolled.

The complaint contains three claims for relief. Count one is a claim for breach of contract, and count two seeks a declaratory judgment. These claims are asserted against the Corporate Defendants. Count three is a claim for fraudulent inducement, which is asserted

---

[1] Stacy Rybacki also goes by the name Stacy Paras and, on occasion, the signature block contains the name Stacy Paras.

against all defendants. Defendants move to dismiss the first amended complaint, with the exception of the breach of contract claim against DR Guns. Plaintiff opposes the motions.

## **STANDARD OF REVIEW**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

## **ANALYSIS**

The Court will address each claim in turn.

1. Breach of contract

The Corporate Defendants argue that, as a matter of basic contract law, the only party to the agreements is DR Guns. The Corporate Defendants argue that the Related Entities are not parties because they did not sign any of the agreements. In response, plaintiff argues that the Court must determine the real parties to the agreements based on the intention of the parties. Here, the Court should look to the plain meaning of the agreements and give effect to each provision. Because the agreements all provide that the related entities of DRG are parties, dismissal is not appropriate.

Upon review, the Court finds that the Corporate Defendants' argument is not well-taken. The agreements define the "Buyer" as "DR GUNS, LLC, an Illinois limited liability company dba DRG Manufacturing dba White Label Armory... and its subsidiaries, parent companies, and/or related companies wherever located." Although the agreements do not expressly name the "related companies wherever located," plaintiff alleges that the identities of these entities are ascertainable. Specifically, plaintiff alleges that DRG shares "common owner(s), manager(s), officer(s), and/or member(s)" with all defendants. (Compl. ¶ 12). In addition, plaintiff alleges that defendant RMI exercises control over DRG and all defendants, and that David and Stacy Rybacki have the authority to bind all defendants. (Compl. ¶ 14). The Court finds that these allegations are sufficient to permit the identification of the parties to the agreements at the

pleading stage.[2]

The Corporate Defendants also argue that the signature block of the agreements indicates that the documents are signed only by "DR Guns." Therefore, it is the only party to the agreements. The Corporate Defendants miss the point. In the agreements, DR Guns purports to bind, not only itself, but all of its "related entities." Provided DR Guns possessed the authority to do so, the related entities became parties based on the signature of DR Guns or its agent. It is well-settled that an agent possessing authority may sign on behalf of the party to be bound. The fact that the Related Entities are not separately identified in the signature block does not, standing alone, warrant dismissal. *See*, *e.g.*, *Roberts v. KND Development 51, LLC*, 2020 WL 6193635 (Oh Ct. App. Oct. 22, 2020)(rejecting argument that defendants were not parties even though they were not specifically identified in agreement and did not separately sign document, where each defendant was alleged to be a "...parent, subsidiary or affiliate...."). *See also*, *Arthrex, Inc. V. Orthogen Aktiengesellschaft*, 250 Fed. Appx. 293 (11th Cir. 2007) (distribution agreement signed by subsidiary, which indicated that definition of party included subsidiary's "affiliates and related entities," bound parent corporation based on agency principals).

The Court thus rejects the Corporate Defendants' argument that a signature on behalf of each separate entity is required to establish the existence of a contract.

The Corporate Defendants also argue that the Related Entities are not parties to the agreements because O.R.C. § 1302.04(A) requires that contracts for the sale of goods be signed by the party against whom enforcement is sought. Plaintiff responds that this provision requires

---

[2] The Court notes that it makes no finding as to whether defendants are "related entities," only that the complaint contains sufficient allegations to withstand a motion to dismiss on this point.

only that the writing be signed by the an "authorized agent" of the party. Here, plaintiff claims that it sufficiently alleges that both Stacy and David Rybacki are authorized agents of the Related Entities and, as such, the agreements comply with Ohio statutory law. Plaintiff alternatively argues an exception exists under O.R.C. § 1302.04(C)(3), which provides that Section 1302.04(A) does not apply if a party has "received and accepted" the goods at issue. As such, even if the agreements were not signed by the Related Entities or an agent thereof, plaintiff's acceptance of those goods forecloses its argument.

Upon review, the Court rejects the Corporate Defendants' argument. Section 1302.04(A) provides as follows:

> Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party whom enforcement is sought *or by his authorized agent or broker*....

(Emphasis added).

Here, there are sufficient allegations to survive a motion to dismiss. As set forth above, the complaint contains allegations that all of the entities are "related." Plaintiff also alleges that David Rybacki and Stacy Rybacki, at least one of whom signed each agreement, possess the actual and apparent authority to act on behalf of all defendants. Accordingly, dismissal is not warranted. Having so concluded, the Court need not reach the Corporate Defendants' alternative argument.

2.  Declaratory judgment

The Corporate Defendants argue that the claim for declaratory relief must be dismissed because it is duplicative of the breach of contract claim. They also argue that the "dispute has

progressed too far for declaratory relief to be appropriate." In response, plaintiff argues that the claims are not duplicative. Plaintiff points out that its breach of contract claim is based on the allegation that defendant failed to pay for goods it delivered. On the other hand, the declaratory judgment claim is based on goods that have yet to be delivered.

Upon review, the Court finds that dismissal is warranted. The Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought..." 28 U.S.C. § 2201(a). The decision whether to entertain an action seeking a declaratory judgment is discretionary. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Some factors courts consider in analyzing whether a case is appropriate for declaratory relief include:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; and

(3) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir.2004).[3]

As an initial matter, the Court agrees with the Corporate Defendants' argument that the declaratory judgment claim is duplicative of the breach of contract claim. In its declaratory judgment claim, plaintiff seeks a declaration that the Covid pandemic excused timely performance under the Force Majeure Agreements. In its breach of contract claim, plaintiff

---

[3] The Court notes that *Bituminous* involved a federal declaratory judgment claim and a concurrently pending state court action addressing the same issues. *Bituminous* addressed two additional factors, neither of which are relevant to this case.

seeks damages from the Corporate Defendants for their alleged breach of these same agreements. It appears that in order to succeed on its breach of contract clam, plaintiff must establish that the Force Majeure Agreements permitted delayed performance by plaintiff. This very finding is at the center of the declaratory judgment claim. The Court agrees with the Corporate Defendants that the claim is duplicative of the breach of contract claim and, as such, the Court declines to entertain count two.

In addition, although not cited or argued by the parties, the relevant factors weigh in favor of dismissal. Issuing a declaratory judgment would not settle the parties' controversy, as plaintiff also seeks damages as a result of the Corporate Defendants' alleged breach of the Force Majeure Agreements. Although a declaratory judgment would serve *some* useful purpose in "clarifying the legal relations at issue," the breach of contract claim is "an alternative remedy that is better or more effective" because it will resolve the entirety of the parties' dispute. Accordingly, an analysis of the relevant factors supports the Court's decision to decline to address the declaratory judgment claim.

3. Fraudulent inducement

The fraudulent inducement claim is asserted against the Corporate Defendants and the Individual Defendants. Because the parties make different arguments, the Court will address each group of defendants separately.

A. The Corporate Defendants

The Corporate Defendants argue that the fraudulent inducement claim is duplicative of the breach of contract claim and must be dismissed. According to the Corporate Defendants, the failure to fulfill a "promise to do something in the future" gives rise to a claim for breach of

contract claim, not a claim sounding in fraud. The Corporate Defendants further argue that a tort claim based on the same actions that give rise to the breach of contract claim will lie only if the defendant owes a separate duty to the defendant.   In response, plaintiff argues that the Corporate Defendants breached an "independent" legal duty "not to induce reliance on false statements of fact."  Plaintiff further argues that promises made in a contract can serve as a basis for a fraudulent inducement claim if the promise is made with a present intention not to perform.

Under Ohio law, "a breach of contract does not create a tort claim."  *Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005 WL 2292800 (Oh. Ct. App. Sept. 21, 2005).

> A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even though no contract existed.

*Textron Fin. Corp. v. Nationwide Ins. Co.*, 684 N.E.2d 1261 (Oh. Ct. App. 1996).

"To hold otherwise would be to convert every unfulfilled contractual promise...into a tort claim."  *Telxon*, at * 13.  *See also*, *Infocision Mgmt. Corp. v. Foundation For Moral Law, Inc.*, 2009 WL 2244166 (N.D. Ohio July 27, 2009)(fraudulent inducement claim improper where plaintiff failed to establish a duty separate from those arising under the parties' agreement). A separate duty will arise in special relationships, such as between an insurer and its insured. *Batista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117-18 (6 th Cir. 1976).  If a separate duty does not exist, the tort-based claim will not lie.

The Ohio Supreme Court has addressed the overlap between breach of contract and fraudulent inducement claims:

> A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract. Examples include a party to a release misrepresenting the economic value of the released

10

claim, or one party employing coercion or duress to cause the other party to sign an agreement. In this case, [plaintiff] makes no allegations about misrepresentations of facts outside the contract; she alleges only that [she was not told] what was in the contract.

*ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998).

On the other hand, Ohio courts have also recognized that a party can be liable in fraud for making "a promise without the present intention of performing." *Captiva, Inc. v. Viz Communications, Inc.*, 85 Fed. Appx. 501, **3 (6th Cir. Jan. 9, 2004). *See also, Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007)(district court correctly noted that a promise made with a present intention not to perform constitutes a misrepresentation of an existing fact). Although a fraud claim cannot be based on the prediction of a future event, a present intention not to perform is not considered a "future event." As such, a present intention not to perform may satisfy the "misrepresentation" element of a fraud claim. *Id*.

Based on the aforementioned principles, Ohio and federal courts addressing this issue often find that a fraudulent inducement claim cannot succeed if the alleged misrepresentation is a contractual provision itself. This is so even if the plaintiff alleges a present intention not to perform. By way of example, in *Dayton Children's Hospital v. Garrett Day*, LLC, 149 N.E.3d 1004 (Oh. Ct. App. 2019), the trial court granted summary judgment with respect to plaintiff's fraudulent inducement claim. The trial court acknowledged that a promise made with a present intention not to perform may form the basis of a fraud claim, but nonetheless held that the fraud claims were duplicative of the contract claims. The trial court did not address the parties' evidence on the issue of intent, and plaintiff appealed on that basis. On appeal, the court of appeals affirmed the trial court's ruling. The court of appeals determined that the "actions [plaintiff] points to as fraudulent inducement are not collateral to the [agreement]. *Id*. at 1034.

11

Because the case "simply involve[d] a situation where two parties contracted, and due to various factors, including poor communication and poor phrasing, their expectations were not met," the fraudulent inducement claim was not viable. *Id*.

In is analysis, *Dayton Children's Hospital* relied favorably on *Thorton v. Cangialosi*, 2010 WL 2162905 (S.D. Ohio May 26, 2010). In *Thornton*, the trial court dismissed plaintiff's claim for fraudulent inducement. The court acknowledged that a present intention not to perform is an exception to the axiom that fraud cannot be predicated on events relating to future actions or conduct. The court noted, however, that whether the claim is based on a present or future misstatement is "not the relevant question." *Id*. at * 3. Rather, the issue is whether a fraudulent inducement claim is "viable in light of the concurrent breach of contract claim." *Id*. After citing *ABM Farms*, the court dismissed the fraudulent inducement claim finding that the misrepresentations that form the basis of the fraudulent inducement claim are the very representations set forth in the parties' agreement. "Under these circumstances, Plaintiff's allegation that [defendant] had no intention of keeping the promises at the time he made them is not enough to save the fraudulent inducement claim." *Id*. at *4. As such dismissal was warranted:

> ...[I]n this case, even though Plaintiffs may have sufficiently alleged a claim of fraudulent inducement, that claim cannot be brought concurrent with the breach of contract claim. The representations that allegedly induced Plaintiffs to enter into the [agreements] are the same allegedly unfulfilled promises that give rise to the breach of contract claim. Because the two claims are factually intertwined and cannot be separated, the Court dismisses the claim of fraudulent inducement.

*Id*. at 5.

Other cases are in accord. *See, e.g.*, *R.G. Barry Corp. Vv. Olivet International, Inc.*, 2106 WL 51228 (S.D. Ohio Jan. 1, 2016)(dismissing claim for fraudulent inducement where the

12

alleged misrepresentations are the same promises contained in the contract); *Infocision Mmgt. Corp. v. Foundation for Moral Law*, *Inc.*, 2009 WL 2244166 (N.D. Ohio July 27, 2009)(present intention not to perform does not create a separate claim for fraudulent inducement where plaintiff's interpretation of contractual provision gives rise to both claims); *Aero Fulfillment Services Corp. v. Oracle Corp.*, 186 F.Supp.3d 764 (S.D. Ohio 2016)(noting that a present intention not to perform is an exception to the "future action" prohibition, but finding dismissal not warranted since defendant allegedly "made misrepresentations *collateral* to the" parties' agreements).

In support of its argument that dismissal is not proper, plaintiff relies on *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866 (6th Cir. 2007). In *Micrel*, the Sixth Circuit affirmed the trial court's grant of summary judgment in favor of defendant with respect to plaintiff's claim for fraud. The Sixth Circuit couched plaintiff's claim as one sounding in "promissory fraud." The court first noted that the trial court correctly concluded that a fraud claim cannot be premised on representations concerning future events. *Id*. at 874. It then went on to state that "it is also true...that a promise made with a present intention not to perform constitutes a misrepresentation of existing fact...." *Id*. The court reviewed a number of misrepresentations allegedly made by the defendant, and determined that some were predictions of future events, while others were barred by the parol evidence rule. The court did note, however, that "whether [defendant] later breached the [agreements] was a separate question from whether [defendant] entered into the agreements without a present intention to [perform]." *Id*. at 876-77. The court agreed with the trial court that plaintiff failed to present sufficient evidence to succeed on its fraud claim.

The Court finds *Micrel* distinguishable. As an initial matter, the Sixth Circuit did not

address the question presented here, *i.e.*, whether a fraudulent inducement claim can proceed in the face of a breach of contract claim where the sole alleged misrepresentation is the contractual language itself. This is significant because to allow a fraudulent inducement claim based solely on contractual language would appear to violate well-settled Ohio law holding that parties are not permitted to transform a breach of contract claim into a fraud claim simply by including an allegation that defendant entered into the contract with a present intention not to perform. Moreover, *Micrel* involved significant negotiations between the parties both before and after the parties signed the relevant agreements, as well as a number of misrepresentations. Here, plaintiff alleges only that it asked for the contractual language at issue to be included in the agreements, and the Corporate Defendants agreed. No other facts are alleged in support of plaintiff's fraudulent inducement claim. As such, the Court finds *Micrel* distinguishable.[4]

The Court further rejects plaintiff's argument that dismissal is warranted because many of the cases on which the Corporate Defendants rely were decided at summary judgment or after a trial. As cited above, both Ohio and federal courts have dismissed fraudulent inducement claims. Moreover, in some of the cases plaintiff points to, the stage of the proceeding does not appear relevant. By way of example, in *Infocision Mmgt. Corp. v. Foundation for Moral Law, Inc.*, 2009 WL 2244166 (N.D. Ohio July 27, 2009), the court granted summary judgment in favor of the defendant. But the court did not point to any evidence submitted by the parties.

---

[4] For this same reason, the Court finds *Captiva v. Viz Communications, Inc.*, 85 Fed. Appx. 501 (6th Cir. 2004) distinguishable. The court affirmed the trial court's grant of summary judgment based on a lack of evidence of a present intention not to perform. The court did not address whether the fraud claim was duplicative of the breach of contract claim.

14

Rather, the court determined that the fraudulent inducement claim failed because defendant's failure to perform gave rise to both claims. *Id*. at * 5. Thus, although the court declined to dismiss the fraud claim, it in essence ruled that, as a matter of law, the obligation to perform under a contract cannot also create a duty in tort.

Similarly, in *Telxon*, the court of appeals reversed the jury's verdict. In so doing, the court relied solely on the way the parties framed the fraud and breach of contract claims. Because the two claims were based on the same conduct, defendant committed no misrepresentation. Thus, the analysis in no way relied on any evidentiary support.

Because plaintiff's sole allegation supporting its fraudulent inducement claim is the contractual language itself, the Court finds that dismissal is warranted.[5]

B.  The Individual Defendants

The Individual Defendants argue that the claim should be dismissed because plaintiff fails to plead fraud with particularity. They also argue that the fraudulent inducement claim cannot survive in the face of the agreements. The Individual Defendants further claim that the economic loss doctrine bars plaintiff's tort claim because plaintiff does not allege losses separate and distinct from its contractual claim. In response, plaintiff argues it sufficiently plead its fraudulent inducement claim. Plaintiff further argues that there is no breach of contract claim

---

[5] To the extent plaintiff argues that the misrepresentation is the Related Entities' "present intention not to perform," the fraudulent inducement claim fails for an additional reason. Plaintiff's only allegation in the complaint is that the Related Entities fraudulently promised to perform under the agreements. But, if the breach of contract claim fails, the fraudulent inducement claim would follow suit. It would make no sense to hold a plaintiff liable for a "present intention not to perform" a contractual obligation that the plaintiff is not legally obligated to perform in the first instance.

15

against the Individual Defendants. Nor are there any allegations suggesting that they are parties to the agreements. Therefore, the existence of the agreements does not bar the fraudulent inducement claim. For the same reason, the economic loss doctrine is inapplicable.

Upon review of the relevant law and the parties' arguments, the Court finds that dismissal is warranted.

> To prove fraud or fraudulent inducement, a plaintiff must establish "(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance.

*Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866 (6th Cir. 2007).

In its brief in opposition to the motion to dismiss, plaintiff acknowledges that the fraud and breach of contract claims are plead in the alternative:

> To be sure, [plaintiff] still believes that each of the [Related Entities] is a party to the Agreements. That is, after all, what the Agreements plainly state. However, if it is determined that one or more of the [Related Entities] is not a party to the Agreements, then the given [Related Entity]– and the [Individual Defendants]–may be liable for fraudulently inducing [plaintiff] into executing the transaction.... [The Individual Defendants] therefore only face potential, alternative liability if it is determined that all the [Related Entities] are not parties to...the Agreements. In the latter instance, separate damages would also ensue.

(Doc. 29 at PageID 15).

Based on plaintiff's representations, there are two possible scenarios. In the event the agreements are construed to bind the Related Entities, then plaintiff admits the Individual Defendants will bear no liability in tort. ("The Individual Defendant] therefore only face potential, alternative liability if it is determined that all the [Related Entities] are not parties to...the Agreements."). Accordingly, in the event the Related Entities are parties to the

16

agreements, a fraudulent inducement claim necessarily fails.

Thus, the Court must determine whether plaintiff states a claim for fraudulent inducement against the Individual Defendants in the event there is a determination that the Related Entities are not parties to the agreements. The Court finds that it does not.

Plaintiff alleges as follows:

> 106. During the period of time leading up to the negotiation and execution of the [Agreements], [the Individual Defendants] represented to [plaintiff] that DRG and all of its 'subsidiaries, parent companies, and/or related companies wherever located,' including the [Related Entities], would perform under the Agreements.
>
> 107. [The Individual Defendants'] representations were material to [plaintiff's] execution of the [Agreements].
>
> 108. [The Individual Defendants] made these representations with such utter disregard for the truth of that knowledge may be inferred. Specifically, [the Individual Defendants and the Related Entities] did not presently intend for the [Related Entities] (other than DRG itself) to perform under the referenced Agreements. This has recently been confirmed...in the above-captioned litigation.

(Doc. 17).

Upon review, the Court finds that the allegations do not meet the specificity requirements of Fed.R.Civ.Pro. 9(b). Rule 9(b) requires that a party must "state with particularity the circumstances constituting fraud..."

> The purposes of Rule 9(b) are (1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions;" (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters. Accordingly, to satisfy Rule 9(b), a plaintiff must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud.

*Thompson v. Bank of America, N.A.*, 773 F.3d 741, 751 (6th Cir. 2014).

Here, plaintiff alleges that the Individual Defendants "during the period of time leading

17

up to the negotiation and execution of the agreements" made the material misrepresentation that the Related Entities had a present intention to perform under the agreements. Plaintiff does not identify the context of the misrepresentation. For example, it is not clear from the complaint *when* the Individual Defendants made the alleged misrepresentation that the Related Entities would perform. There are no allegations of any alleged conversations between plaintiff and the Individual Defendants regarding this issue. Plaintiff alleges only that the language ultimately made its way into the agreements. Thus, although plaintiff alleges that the misrepresentation occurred prior to the negotiation and execution of the agreements, there are no facts supporting this allegation. It is not clear to the Court whether plaintiff is alleging that the Individual Defendants conveyed the misrepresentation at any point prior to the signing of the agreements, or whether the alleged misrepresentation is contained solely within the agreements themselves. These allegations fall short of satisfying Rule 9(b).

Moreover, the complaint improperly lumps the Individual Defendants together without separating out which Individual Defendant made a particular misrepresentation. As plaintiff does not identify when the misrepresentations were made, it is difficult to determine who made them. For example, to the extent any misrepresentation was made extraneous to the language in the Agreements, there are no allegations identifying which of the Individual Defendants made any such misrepresentation, or to whom. To the extent the complaint could be read to allege that the misrepresentation is contained within the Agreements themselves,[6] presumably the

---

[6] It would appear that the Court's determination with regard to the Corporate Defendants would also preclude a claim against the Individual Defendants. In the event the language in the Agreements does not require performance by the Related Entities, the Individual Defendants could not have misrepresented the

misrepresentation was made when the Individual Defendants affixed their signatures to the Agreements.  Not all of the Agreements, however, are signed by both Individual Defendants.  Yet, the complaint alleges generally that both are liable for all misrepresentations.  These are precisely the type of allegations that fail to satisfy Rule 9(b)'s heightened pleading requirement.

Having concluded that dismissal of the fraudulent inducement claim is required due to plaintiff's failure to plead with specificity, the Court need not reach the Individual Defendants' alternative arguments.

**CONCLUSION**

For the foregoing reasons, the Corporate Defendants' Motion is GRANTED in PART and DENIED in PART.  Counts two and three are DISMISSED, and count one remains pending.  The Individual Defendants' Motion is GRANTED, and they are DISMISSED as parties to this lawsuit.

IT IS SO ORDERED.

Dated: 2/8/23

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

---

Related Entities' present intention to perform.  This is so because the Related Entities would not be legally required to perform in the first instance.

19