UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Little Mountain Precision, LLC, | ) | CASE NO. 1:22 CV 1471 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| DR Guns, LLC, *et al.*, | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Third-Party Metal Seal Precision, Ltd. and John L. Habe, IV's Motion for Judgment on the Pleadings on Defendant DR Guns, LLC's Third-Party Complaint (Doc. 62). This is a breach of contract case. For the reasons that follow, the motion is GRANTED, and the third-party complaint is DISMISSED.

**FACTS**

The facts of this case have been set forth in prior opinions and need not be fully rewritten herein. Only those facts necessary for a resolution of the instant motion are detailed. For ease of reference, the facts specific to each claim are set forth in the analysis section.

Plaintiff Little Mountain Precision, LLC ("Little Mountain") filed this action against DR Guns, LLC ("DR Guns"), certain entities alleged to be related to DR Guns, and two individuals. In large measure, the amended complaint is based on DR Guns's alleged breach of a number of agreements between the parties. The Court dismissed the individual defendants and only the corporate defendants remain.

In response to the complaint, DR Guns filed a third-party complaint ("Complaint") against Metal Seal Precision, Ltd. ("Metal Seal") and John L. Habe, IV ("Habe"). The Complaint contains two claims for relief. Count one is a breach of contract claim against Metal Seal, and count two alleges fraudulent misrepresentation against Habe and "on behalf of" Little Mountain. Metal Seal and Habe move for judgment on the pleadings and DR Guns opposes the motion.

**STANDARD OF REVIEW**

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion."*Mellentine v. Ameriquest Mortg. Co.,* 2013 WL 560515 (6th Cir. February 14, 2013) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007).

Thus, "[w]e assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate*

*Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

### ANALYSIS

1. Breach of contract

Count one alleges breach of contract against Metal Seal. A review of the agreements discloses that Metal Seal is itself not named as a party to any of the agreements. DR Guns, however, asserts that Metal Seal is the alter ego of Little Mountain. As such, Metal Seal is in actuality the same entity as Little Mountain. In response, Metal Seal argues that pursuant to

3

Ohio Supreme Court law, there can be no "piercing the veil" between sister corporations. As Metal Seal has no ownership interest in Little Mountain, Metal Seal cannot be held liable for breach of the agreements signed exclusively by Little Mountain. Metal Seal further argues that Ohio law does not permit an "alter ego" theory that is separate from a "piercing the veil" theory.

In support of its alter ego theory, DR Guns alleges as follows. Little Mountain and Metal Seal are owned and operated by the same individuals, and there is a unity of ownership such that the two entities do not have separate personalities. Both entities share the same principal office, email accounts, and employees. Little Mountain alleges that Habe sent emails from Metal Seal's email account regarding the agreements. In addition, at least some of the emails sent from Metal Seal email accounts bear the Little Mountain logo. Little Mountain and Metal Seal hold themselves out to the public as one entity, and both are in the business of manufacturing firearm components.

Upon review, the Court agrees with Metal Seal. Under Ohio law, the corporate form may be disregarded upon satisfaction of the *Belvedere* factors. *Belvedere Cond. Unit Owners' Assn. v. R.E. Roark*, 617 N.E.2d 1075 (Ohio 1993). In order to hold one corporation liable for the misdeeds of another, a plaintiff must demonstrate that "control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own." *Id*. at 1086. This aspect of the test is "a concise statement of the alter ego doctrine." *Id*. In addition, a plaintiff must establish that "control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity." *Id*. The third factor requires a showing that "injury or unjust loss resulted to the plaintiff from such control and wrong." *Id*.

DR Guns expressly alleges that both Little Mountain and Metal Seal are "owned and operated by the same individuals: John Habe, IV...Richard Sippola...and Mario Mannocchio." (Doc. 31 ¶12). As such, they are "sister corporations." Ohio, however, does not recognize an alter ego theory of liability for sister corporations. *Minno v. Pro-Fab, Inc.*, 905 N.E.2d 613 (Ohio 2009).

In *Minno*, the court rejected the concept of "horizontal" veil piercing. Although the two corporations shared the same shareholders and officers, engaged in the same type of work, and shared identical business addresses, neither an "alter ego" nor a "veil piercing" theory could be asserted against a sister corporation based on unsafe working conditions. The court held:

> In contrast to a shareholder's ownership of a corporation or a parent corporation's ownership of another corporation, the common shareholder ownership of sister corporations does not provide one sister corporation with the inherent ability to exercise control over the other. Any wrongful act committed by one sister corporation might have been instigated by the corporation's owners, but it could not have been instigated by the corporation's sister.
>
> Thus, we hold that a plaintiff cannot pierce the corporate veil of one corporation to reach its sister corporation. A corporation's veil may not be pierced in order to hold a second corporation liable for the corporate misdeeds of the first when the two corporations have common individual shareholders but neither corporation has any ownership interest in the other corporation. Despite the element of common shareholder identity, sister corporations are separate corporations and are unable to exercise control over each other in the manner that a controlling shareholder can. This lack of ability of one corporation to control the conduct of its sister corporation precludes application of the piercing-the-corporate-veil doctrine.

*Minno*, 905 N.E.2d at 617.

In *Minno*, the court expressly indicated that the plaintiff alleged that defendant had directly controlled the work site where the accident happened and noted that plaintiff argued it was asserting an alter ego theory of liability. In other words, regardless of whether a party terms it an "alter ego" theory or a "piercing the veil" theory, neither is recognized in Ohio with respect

to sister companies. *See, also, Hay v. Shirey,* 2021 WL 2043151 (N.D. Ohio May 21, 2021); *Parker v. Miller*, 2018 WL 3743981 (S.D. Ohio Aug. 7, 2018). This conclusion is also consistent with *Belvedere*. As the court indicated, the first prong of the test, which the court referred to as a "concise statement of the alter ego doctrine" is the portion of the test that addresses the "control" factors. Reading *Belvedere* and *Minno* together, the "alter ego doctrine" cannot be applied to sister corporations because they cannot assert control over each other as a matter of law. Accordingly, even if DR Guns properly asserted a breach of contract claim against Metal Seal based on an alter ego theory as opposed to a veil piercing theory, the claim fails because DR Guns expressly alleges that Little Mountain and Metal Seal are sister corporations.[1]

DR Guns relies on *International Petroleum Prods. and Additives Co., Inc. v. PXL Chem. BV*, 2022 WL 4537974 (S.D. Ohio Sept. 28, 2022). Although the court appears to have recognized a distinction between "alter ego" and "piercing the corporate veil," the court determined that "Ohio courts have not squarely addressed when, if ever, alter ego jurisdiction is applicable outside of the parent-subsidiary paradigm." *Id*. at *8. The court did recognize, however, that *Minno* "narrowly held" that the corporate veil of a sister corporation cannot be pierced because neither possesses an ownership interest in the other. *Id*. Notably, *International Petroleum* did not involve sister corporations and, instead, addressed only whether a federal court can obtain personal jurisdiction over a subsidiary corporation. As the court recognized, it

---

[1] The Court rejects DR Guns's argument that this issue should be addressed at the summary judgment stage. While the Court acknowledges that alter ego issues may be fact dependent, this case differs because DR Guns expressly alleges that Little Mountain and Metal Seal are sister corporations.

6

was faced with this unusual situation since courts typically address whether the court can obtain personal jurisdiction over the parent company. Because *International Petroleum* did not involve sister corporations, it is not on point.

DR Guns also cites *In re Fisher*, 296 Fed. Appx. 494 (6th Cir. Oct. 10, 2008). In that case, the Sixth Circuit applied Ohio law and determined that "veil piercing and alter ego concepts are distinct. The former asks a court to hold A vicariously liable for B's debts, while the latter asserts that A and B are the same entity and therefore liability is direct." *Id*. at 506.[2]

Ohio courts have since indicated that *In re Fisher* is not an accurate statement of Ohio law. *See e.g.*, *U.S. Bank N.A. v. MMCO, LLC*, 183 N.E.3d 499 (Ohio Ct. App. 2021)(noting that Ohio courts have not adopted "alter ego liability" as a distinct remedy and criticizing *In re Fisher* for having done so); *Fifth Third Bank v. Diversified Transp. Servs., Inc.*, 2010 Misc. LEXIS 547 (*In re Fisher* was mistaken in its explanation of the distinction between alter ego and veil piercing); *Rossisa Participaçoes S.A. v. The Reynolds and Reynolds Co.*, 2019 WL 4242937 (S.D. Ohio Sept. 9, 2019)(under Ohio law, the veil piercing test subsumes the alter ego doctrine and is not a separate theory of liability).

Notably, *Fisher* was decided prior to *Minno* and did not involve sister corporations. This distinction is important. *Belvedere* held that the first prong of the "piercing the corporate veil" test is tantamount to the alter ego doctrine. Thus, under Ohio law, the "alter ego" doctrine

---

[2]   DR Guns also relies on *Laborers Pension Trust Fund-Detroit and Vicinity v. Interior Exterior Specialists Construction Group, Inc.*, 394 Fed. Appx. 285 (6th Cir. 2010). That case, however, did not apply Ohio law. Rather, it addressed the ability of one employer to evade its obligations under the National Labor Relations Act by merely changing or altering the corporate form. The applicable "alter ego" analysis arose exclusively under federal law.

7

is a test of the *control* one corporation has over the other. Even if those concepts could be separated into two distinct theories of liability, a plaintiff must (at a minimum) satisfy the control element. *Minno* holds that sister corporations cannot control each other. *Fisher* involved an attempt to hold a sole shareholder directly liable for the debts of the corporation, and does not aid DR Guns in this case as it did not address a situation where no ownership exists between the entities to be held liable.[3]

Based on *Belvedere* and *Minno*, together with DR Guns's express allegation that Little Mountain and Metal Seal are sister corporations, there can be no breach of contract claim against Metal Seal as a matter of law. (Doc. 31 ¶12).

2. Fraudulent misrepresentation

In count two, DR Guns alleges that Habe himself "and on behalf of Little Mountain" made fraudulent misrepresentations. According to Habe, the Complaint falls short of satisfying Rule 9(b)'s heightened pleading requirements. Habe argues that DR Guns fails to allege any specific false statement. Nor does DR Guns allege the time, place or content of any alleged misrepresentation. Habe further claims that any fraud claim cannot proceed because the parties did not consummate a sale of DR Guns to Little Mountain.

In response, DR Guns argues that the Complaint does allege the time, place, and content

---

[3] *In re Fisher* is a bankruptcy case. It identified certain factors to look at to determine whether the alter ego doctrine is applicable. Those factors include, but are not limited to, grossly inadequate capitalization, failure to observe corporate formalities, insolvency of the corporation at the time the debt was incurred, diversion of funds for personal use, and use of the corporation as a facade. There are virtually no facts in the Complaint directed at these factors.

of the fraud.  DR Guns further notes that Habe was able to file an answer to the allegations. DR Guns argues that Habe never intended to consummate the purchase of Little Mountain, and a present intention not to perform supports a fraud claim.  Therefore, the fact that the sale never occurred does not foreclose the fraud claim.

In support of the fraudulent misrepresentation claim, DR Guns alleges as follows.  In late 2021, DR Guns and Habe began discussing a possible sale of DR Guns to Little Mountain. Beginning in January of 2022, Little Mountain started reviewing DR Guns's financial records and inventory.  Despite the existence of several letters of intent, the parties never consummated a sale.  Somehow, Habe inserted himself into DR Guns's business and began to operate at least some aspects thereof.

According to the Complaint, Habe modified DR Guns's pricing structure to include minimum sales pricing, which was detrimental to DR Guns's business relationships.  He further extended employment offers to certain DR Guns employees without regard to the value those individuals offered to the company.  Habe directed DR Guns's employees to re-categorize inventory as finished goods.  These actions affected the financial position of DR Guns and drove down its value.  As the value continued to decrease, Habe made additional offers to purchase DR Guns at lower prices.

DR Guns alleges that Habe requested that its employees re-categorize inventory to finished goods in an effort to meet certain bank covenants and to increase his borrowing base certificate.  In addition, Habe's actions drove down the value of DR Guns so that Habe could purchase DR Guns for "pennies on the dollar."  (Compl. ¶ 62).  DR Guns alleges that Habe "misrepresented that his actions were intended to improve DR Guns's sales and in the best

interest of DR Guns...."  (Compl. ¶ 60).  In addition, the Complaint provides that the "fraudulent misrepresentations" were made with reckless disregard of DRG's Best interests and were made in bad faith.

Upon review, the Court finds that the Complaint fails to satisfy Rule 9(b)'s heightened pleading standard.  As such, Habe's motion is well-taken.

When pleading fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." It is well-settled in the Sixth Circuit that circumstances constituting fraud include "the time, place, and content of the alleged misrepresentation" as well as the identity of the individual making the representation. *United States v. Ford Motor Credit Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotations omitted); *Sogevalor, SA v. Penn Central Corp.*, 771 F.Supp. 890, 893 (S.D. Ohio 1991) *(citing Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)). The plaintiff must also allege "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Ford Motor Credit*, 532 F.3d at 504. The purpose of this requirement is to "ensur[e] that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense." *Id*. Implicit in this purpose are two related concerns. First, requiring a plaintiff to plead fraud with particularity "discourages fishing expeditions...which appear more likely to consume a defendant's resources than to reveal evidence of wrongdoing." *Id*. (internal quotations omitted). Second, the particularity requirement protects a defendant from "unwarranted damage to its reputation caused by spurious charges of immoral and fraudulent behavior." *Id*. (internal quotations omitted).

Here, although DR Guns alleges a number of actions taken by Habe, the Complaint is

largely devoid of any misrepresentation of material fact.[4] The only statement identified in the Complaint is that "Habe misrepresented that his actions were intended to improve [DR Guns's] sales and in the best interest of [DR Guns]...." But, there is no indication as to when Habe made any such statement or to whom it was made. Presumably, the statement was made sometime around the time that Habe "acted as if he...[was] already in control of [DR Guns]." But, there are no allegations as to when this occurred. Moreover, to the extent that the DR Guns is attempting to allege some type of fraudulent scheme through Habe's actions, the claim fails. There are no facts describing or detailing how Habe came to be allowed to assume control of DR Guns. Based on the Complaint, for instance, Habe instructed DR Guns's employees to alter inventory and hire employees. But, as the Complaint also alleges, no sale was ever consummated by the parties. Therefore, at all times, DR Guns approved these actions. Absent allegations that there was some relationship, agreement, or understanding between Habe and DR Guns, the fraud claim fails. Regardless, the Complaint does not contain sufficient detail regarding either a factual representation or the fraud "scheme" to satisfy Rule 9(b)'s heightened pleading requirements.

In is brief, DR Guns argues that the fraudulent misrepresentations occurred "in late 2021 and early 2022," which is the time period that DR Guns and Habe discussed a possible sale of DR Guns to Little Mountain. But, the Complaint does not identify any alleged misrepresentation made during this time frame. Rather, the Complaint alleges that "in late 2021...DR Guns and Habe began discussing a possible sale of DR Guns's business to Little Mountain," and

---

[4] The Court is aware that a fraudulent misrepresentation claim can be based on a material omission. The Complaint does not identify any alleged omission or a corresponding duty to disclose.

11

"beginning in January of 2022, Little Mountain's treasurer...reviewed DR Guns's financial records and inventory." DR Guns points to letters of intent, which are referenced in the Complaint. According to DR Guns, Habe "falsely represented that he was interested in a purchase of DR Guns for the price set forth in his original letter of intent." But, none of these allegations are set forth in the Complaint. The letters of intent, while referenced in the Complaint are not attached to either the Complaint or DR Guns's brief in opposition to this motion.

Because the Court finds that the allegations do not satisfy Rue 9(b), the Court need not address whether the failure to consummate the purchase of DR Guns also precludes a fraud claim.

Accordingly, Habe's argument is well-taken and dismissal is warranted.[5]

**CONCLUSION**

For the foregoing reasons, Third-Party Metal Seal Precision, Ltd. and John L. Habe, IV's Motion for Judgment on the Pleadings on Defendant DR Guns, LLC's Third-Party Complaint (Doc. 62) is GRANTED and the third-party complaint is DISMISSED.

IT IS SO ORDERED.

---

[5] DR Guns argues that the purpose of Rule 9(b) was satisfied because Habe was able to file an answer. Although the ability to answer is an important element in the Rule 9(b) analysis, it is not dispositive. Rule 9(b) is also designed to protect against damage to reputation from spurious allegations. Rule 12(c) expressly allows a movant to argue that the complaint fails to state a claim upon which relief may be granted. Because arguments arising under Rule 9(b) are addressed under a "failure to state a claim for relief" standard, it does not appear that a movant waives Rule 9(b)'s pleading requirements by raising it in a Rule 12(c) motion.

Dated: 7/27/23

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge