**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**


Little Mountain, LLC,                )      **CASE NO. 1:22 CV 1471**
                                     )
            Plaintiff,               )      **JUDGE PATRICIA A. GAUGHAN**
                                     )
      vs.                            )
                                     )
DR Guns, LLC, et al.,                )
                                     )      <u>**Memorandum of Opinion and Order**</u>
                                     )
            Defendants.              )


<u>**INTRODUCTION**</u>

This matter is before the Court upon the Motion of Plaintiff Little Mountain Precision, LLC for an Award of Attorney Fees and Costs. (Doc. 223.) This is a breach of contract case. For the reasons that follow, the motion is granted in part and denied in part.

<u>**FACTS**</u>[1]

On July 29, 2022, plaintiff Little Mountain Precision, LLC ("Little Mountain") brought this suit alleging that defendant DR Guns, LLC ("DR Guns") and certain related corporate entities and

---

[1] Only those facts pertinent to the present motion are included below. More complete facts and procedural history have been summarized at length in the Court's other memorandum of opinions and orders in this case.

individuals were liable for breaching four separate agreements entered between the parties. This case proceeded to trial against DR Guns only and on only two of the agreements.

On September 27, 2024, the empaneled jury found that DR Guns breached a single agreement executed between the parties (the "Gas Key Agreement"). The jury awarded Little Mountain $3,830,586.00 in damages. The jury also found that Little Mountain is entitled to its "reasonable legal and litigation expenses (caused by breach of the Gas Key Agreement)." (Doc. 213.) The parties stipulated in advance of the jury deliberations that any award of reasonable legal and litigation expenses would be determined by this Court.

Little Mountain now moves for an award of $588,526.50 in attorney fees and $60,065.54 in litigation expenses.[2] DR Guns opposes the award of any attorney fees and litigation expenses or, in the alternative, asks this Court to reduce any award of fees below what Little Mountain requests.

**STANDARD OF REVIEW**

While "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation, . . . [t]here are exceptions to this rule." *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009) (internal citations omitted). "Attorney fees may be awarded when . . . an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees[.]" *Id.* (citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St. 3d 32, 34 (1987)). "In these

---

[2] Little Mountain originally moved for an award of $608,397.00 in attorney fees and $85,342.61 in litigation expenses. The Court ordered Little Mountain to submit a revised accounting because that initial request and accounting appeared to include expenses beyond those caused by DR Guns' breach of the Gas Key Agreement. In its revised accounting, Little Mountain appears to reduce its request for attorney fees by $19,870.50 and its request for litigation expenses by $25,277.07.

instances, agreements to pay another's attorney fees are generally 'enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.'" *Id.* at 400–01 (quoting *Nottingdale*).

In determining an appropriate attorney fee award, courts "are not required to act as green-eyeshade accountants and achieve auditing perfection but instead must simply do rough justice." *Gauthier v. Gauthier*, 234 N.E.3d 1168, 1181 (Ohio Ct. App. 2024) (internal quotation marks and citations omitted)). When applying Ohio law, "there is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked . . . is the proper amount for an attorney-fee award." *Phoenix Lighting Grp., LLC v. Genlyte Thomas Grp., LLC*, 153 N.E.3d 30, 38 (Ohio 2020). Nevertheless, "[a] trial court has discretion to modify the presumptive calculation of an attorney-fee award—the reasonable hourly rate multiplied by the number of hours worked—but any modification must be accompanied by a rationale justifying the modification." *Id.* at 38.

## ANALYSIS

Little Mountain contends that it is entitled to $588,526.50 in reasonable attorney fees and $60,065.54 in litigation expenses. The Court will address each in turn.

### 1.     Attorney Fees

Courts applying Ohio law to determine reasonable attorney fees start by determining the "lodestar," which is calculated by multiplying the number of hours reasonably worked times the hourly rates of the attorneys and their staff who worked those hours. *Calabrese Law Firm v. Christie*, 236 N.E.3d 388, 405–06 (Ohio Ct. App. Feb. 15, 2024) (quoting *Bittner v. Tri-County Toyota, Inc.*, 569 N.E.2d 464, 466 (Ohio 1991)).

3

### A. Reasonable Hourly Rate

In support of its motion, Little Mountain has provided the hourly rates of all the attorneys, law clerks, and paralegals who billed time to Little Mountain's claims against DR Guns. (Doc. 223, at 5–6.) Little Mountain has also provided a declaration of one JoZeff W. Gebolys, Esq., who avers that the hourly rates charged by Little Mountain's counsel in this matter are consistent with the market rates charged by similarly situated attorneys practicing in Cleveland, Ohio. (Doc. 223-11.)

The hourly rates for the attorneys who billed time to this matter range from $245 to $465. DR Guns does not argue that these rates are out of line with the going market rates in Cleveland— nor could it. Even the highest hourly rate of $465 is well within the market average for an experienced attorney practicing at a mid-sized firm in the Cleveland market. The same is true for the paralegal hourly rates of $150 and $170.

DR Guns does, however, takes issue with work billed by law clerks at an hourly rate of $135. Citing one case from this district that found a law clerk hourly rate of $150 to be too high and one case from the Southern District of Iowa, DR Guns argues that Little Mountain should not be awarded fees for work performed by law clerks. It is not clear whether DR Guns is arguing that the hourly rate of $135 is too high or law clerk work should be categorically excluded but, either way, this Court disagrees. DR Guns fails to point to any Ohio case law that bars work by law clerks in an award of reasonable legal and litigation expenses. Further, DR Guns does not contend that the language of the Gas Key Agreement is limited to expenses incurred by licensed attorneys. Other courts have included law clerk work in awards of attorney fees and this Court finds $135/hour to be a reasonable rate for a law clerk at a mid-sized firm in Cleveland, Ohio. *E.g.*, *WHG TM Corp. v. Patel*, 2008 WL 495794, at *2 (N.D. Ohio Feb. 22, 2008); *see also Snyder v. Comm'r of Soc. Sec'y*,

4

2011 WL 66458, at *2 (N.D. Ohio Jan. 10, 2011) ("Excluding compensation for work done by paralegals or law clerks would be counterproductive because excluding reimbursement for such work might encourage attorneys to handle entire cases themselves, thereby achieving the same results at a higher overall cost.").

### B.  Reasonable Hours Worked

Having determined that Little Mountain's counsels' hourly rates are reasonable, the Court turns to determine whether the total hours billed are reasonable.

In support of its motion, Little Mountain has submitted two exhibits (Exhibit 4-B and Exhibit 5-B), which it represents are "detailed, itemized billing records that specify, for each entry, the date that the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and, the specific task completed." (Doc. 223, at 9.) The Court has no reason to question that the total hours billed by Little Mountain's counsel as detailed in these exhibits are reasonable given all the claims and defenses raised in this action. The issue, however, is whether Little Mountain is entitled to payment by DR Guns for all those hours billed. Little Mountain's entitlement to its reasonable legal and litigation expenses is limited to those expenses caused by DR Guns' breach of the Gas Key Agreement.[3]

---

[3] Each agreement at issue in this case contained the same damages provision, which, in the event of "Default" by DR Guns, entitled Little Mountain to recover several categories of damages related to the Default of that contract, including "reasonable legal and litigation expenses." (*E.g.*, 17-1 § 9(E).) To be sure, Little Mountain does not contend that it is categorically entitled to reasonable legal and litigation expenses for any of the other agreements. In fact, Little Mountain represents that it excluded from its claim "hours spent solely on claims that Little Mountain did not ultimately prevail on." (Doc. 223, at 9.)

Unfortunately, Little Mountain continues to miss this key point despite being given a second chance to submit an accounting limited to those expenses. In its revised accounting (Docs. 230-1–230-2), Little Mountain still seeks reimbursement for expenses beyond those caused by DR Guns' breach of the Gas Key Agreement.

For example, Little Mountain seeks reimbursement for time spent working on Little Mountain's answer to DR Guns' counterclaims on agreements other than the Gas Key Agreement (i.e., the Carrier Agreement, the Upper & Lower Agreement, and the Grinding Agreement). Little Mountain argues that it is entitled to expenses incurred defending against DR Guns' counterclaims because "to fully prevail under the Gas Key Agreement, Little Mountain had to successfully defend against DR Guns' counterclaims under the parties' other contracts." (Doc. 223, at 15.) This is not true. DR Guns did not bring any counterclaim against Little Mountain for breach of the Gas Key Agreement. As Little Mountain repeatedly stated throughout this litigation, each of the parties' four agreements was a separate agreement.[4] This Court never held otherwise. Unlike the cases cited by Little Mountain in its motion, Little Mountain did not have to successfully defend against DR Guns' counterclaims to successfully establish DR Guns' liability for breach of the Gas Key Agreement.

Little Mountain also seeks reimbursement for work related to its pursuit of claims against corporate entities related to DR Guns. Whether or not these other entities were parties to the Gas Key Agreement, Little Mountain failed to establish that any of these entities were in "Default" and

---

[4] Little Mountain even echoes this sentiment in its present motion. (Doc. 223, at 13 ("While [the parties'] relationship yielded four separate agreements . . . .").)

6

liable for damages under the Gas Key Agreement. Again, Little Mountain is entitled only to attorney fees caused by DR Guns' breach of the Gas Key Agreement. Little Mountain fails to explain how the Gas Key Agreement entitles Little Mountain to recover fees pursuing unsuccessful claims against entities other than DR Guns.[5]

Even more confusing, Little Mountain requests attorney fees for work done answering DR Guns' third-party complaint against John Habe, IV and Metal Seal Precision, Ltd.—neither of which was a party to the Gas Key Agreement. It is unclear how the Gas Key Agreement would entitle Little Mountain to recover expenses it incurred defending John Habe, IV and Metal Seal Precision, Ltd.'s against DR Guns' claim, and Little Mountain offers no explanation.

Beyond this sampling of examples, Little Mountain's time entries in general lack a key detail—the extent to which they relate to work caused by DR Guns' breach of the Gas Key Agreement. For example, several entries in Little Mountain's submitted accounting make it impossible for this Court to determine whether they relate to the Gas Key Agreement, such as those entries with narratives that provide nothing more than "continued developing written discovery requests to Defendants," and "[f]urther review and development of legal issues." (*E.g.*, Doc. 230-1, at 2; *id.* at 42.)

---

[5] When Little Mountain talks about its "success" in this litigation, it ignores that the only relevant "success" for purposes of this motion is its successful claim under the Gas Key Agreement against DR Guns. Unlike the cases cited by Little Mountain where parties were entitled to attorney fees by statute and the courts considered the parties' overall success—Little Mountain is entitled only to those expenses contractually outlined in the Gas Key Agreement. Little Mountain's success defending against other claims is irrelevant here.

As the Court cautioned in its order providing Little Mountain a second chance to submit a sufficient accounting, "when fashioning an attorney-fee award, [courts] are not required to act as green-eyeshade accountants and achieve auditing perfection but instead must simply [ ] do rough justice." *Gauthier*, 234 N.E.3d at 1181 (internal quotation marks and citations omitted)). Accordingly, "[t]he party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed" *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999), which includes "maintain[ing] billing records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case and should exercise billing judgment with respect to hours worked." *Easter v. Beacon Tri-State Staffing, Inc.*, 2020 WL 419433, at *2 (S.D. Ohio Jan. 27, 2020) (internal quotation marks and citations omitted).)

Little Mountain argues it should be able to recover certain expenses encompassing work on other claims because "the work Little Mountain undertook to prevail on its claims under the Gas Key Agreement was closely intertwined with the work performed on other claims and defenses in this case . . . ." (Doc. 223, at 13.)  In doing so, Little Mountain once again ignores that the language of the Gas Key Agreement controls its entitlement to its legal and litigation expenses. Nothing in the Gas Key Agreement or the jury's verdict entitles Little Mountain to its expenses incurred pursing unsuccessful claims against DR Guns or defending against DR Guns' own claims and defenses. To be sure, Little Mountain does not even attempt to connect its argument to the language of the Gas Key Agreement and the limited cases Little Mountain cites concern statutory rights to reasonable attorney fees—not contractually outlined entitlements. (Doc. 223, at 13 (citing *Déjà Vu v. Metro. Gov't of Nashville & Davidson Cty.*, 421 F.3d 417, 423 (6th Cir. 2005) (statutory entitlement to reasonable attorney fees), and *Corey v. Sedgwick Claims Mgmt. Servs.*, 2018 WL

8

467517, at *2 (N.D. Ohio Jan. 18, 2018) (ERISA statutory entitlement to reasonable attorney fees)).)

For example, Little Mountain seeks expenses for its preparation of its motion for summary judgment. That motion for summary judgment, however, addressed more claims and defenses than DR Guns' breach of the Gas Key Agreement. The motion for summary judgment also addressed Little Mountain's claim under the Carrier Agreement and DR Guns' counterclaim, among other issues. Still, the Court acknowledges that certain issues did overlap multiple claims and were necessary for Little Mountain's success on its claim under the Gas Key Agreement—such as time spent on the issues of adequate notice and liquidated damages. The Court also acknowledges that it is difficult to categorically divide work spend on certain projects (such as dispositive motions) by discrete issues.

Still, for all the aforementioned reasons, Little Mountain has largely failed to meet its burden of proof on the number of hours expended by its counsel because of DR Guns' breach of the Gas Key Agreement. It is not the job of this Court to review each entry of Little Mountain's counsels' submitted time sheets, determine whether the work was caused by DR Gun' breach of the Gas Key Agreement, and calculate the hours spent. Rather, without sufficient evidence from Little Mountain, this Court's task is only to achieve "rough justice." *See Gauthier*, 234 N.E.3d at 1181.

Having considered the facts and circumstances of this case, along with Little Mountain's submitted accounting, Court finds that an award of $192,184.40 is a fair estimate of Little Mountain's reasonable attorney fees (caused by breach of the Gas Key Agreement). The Court arrived at this number by taking a percentage of the total amount of attorney fees that Little Mountain represents its counsel billed to this matter, as listed in Exhibit 4-B and Exhibit 5-B.

9

Entries in Exhibit 4-B largely relate to work done while Little Mountain pursued four claims—before this Court ruled on the parties' motions for summary judgment. Attorney fees requested for the work listed in Exhibit 4-B total $515,453.50. Because the Gas Key Agreement represented one-fourth of the claims pursued during that period, $128,863.40 represents a fair estimate of Little Mountain's reasonable attorney fees (caused by breach of the Gas Key Agreement) for the work listed in Exhibit 4-B. [6]

Entries in Exhibit 5-B relate to work done for trial in this case. At trial, Little Mountain pursued two claims. Attorney fees requested for the work listed in Exhibit 5-B total $126,642.00. Because Little Mountain succeeded on one of the two claims it pursued at trial, $63,321.00 represents a fair estimate of Little Mountain's reasonable attorney fees (caused by breach of the Gas Key Agreement) for the work listed in Exhibit 5-B.

Together, an award of $192,184.40 for reasonable attorney fees achieves "rough justice" without requiring the Court to "act as green-eyeshade accountants and achieve auditing perfection" by making entry-by-entry determinations as to Little Mountain's reasonable attorney fees (caused by breach of the Gas Key Agreement). *See Gauthier*, 234 N.E.3d at 1181. Further, the Court finds this to be a fair estimate based on the Court's "overall sense" of Little Mountain's claim against DR Guns for breach of the Gas Key Agreement. *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

---

[6] This Court acknowledges that Exhibit 4-B also includes some work done between this Court's order on the dispositive motions and trial—a time when Little Mountain pursued only two claims. But Little Mountain did not separate its counsel's work in a way that allowed the Court to easily calculate the total fees requested for different stages of litigation and it is not the job of this Court to perform such an accounting.

10

### 2.   Litigation Expenses

Little Mountain also seeks $60,065.54 in litigation expenses. Little Mountain represents that this figure includes (1) $10,649.94 in research fees, e-discovery and document storage costs, and travel fees for out-of-state depositions; (2) $37,915.60 for the expert testimony of John Petrancosta, and (3) $11,500.00 for trial technology support services. Little Mountain has submitted invoices from the respective vendors evincing these amounts. In its opposition brief, DR Guns takes no issue with the first and third category of costs,[7] but argues that this Court should deny Little Mountain any fees associated with the expert testimony of John Petrancosta.

Again, Little Mountain erroneously presupposes that it is entitled to all these litigation expenses without explaining how they were caused by DR Gun's breach of the Gas Key Agreement. Having considered the invoices in light of the contractual limitation on Little Mountain's entitlement to fees, the Court finds that a similar method as that used to estimate the reasonable attorney fees is warranted and achieves the requisite "rough justice."

Accordingly, Little Mountain is entitled to $35,623.74 in litigation expenses caused by DR Guns' breach of the Gas Key Agreement. This represents (1) $10,649.94 for research, storage, and travel—all or at least most of which likely would have been caused by DR Guns' breach of the Gas

---

[7] After Little Mountain filed its revised accounting, DR Guns filed "Defendant DR Guns, LLC's Response to Plaintiff's Notice of Filing of Updated Accounting of Attorney's Fees and Costs." In that document, DR Guns, for the first time, argued that Little Mountain is entitled to only 50% of the $11,500.00 for trial technology support services.

Key Agreement alone, and which DR Guns does not challenge, (2) $19,223.80 for John Petrancosta's expert work,[8] and (3) $5,750.00 for trial technology support services.[9]

**CONCLUSION**

For all the aforementioned reasons, the Motion of Plaintiff Little Mountain Precision, LLC for an Award of Attorney Fees and Costs is granted in part and denied in part. Little Mountain is awarded $192,184.40 in attorney fees and $35,623.74 in litigation expenses.


IT IS SO ORDERED.

                                        /s/ Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
                                        United States District Judge
Dated:  1/29/25

---

[8] This represents 25% of the billed invoices while Petrancosta worked on calculations for all four agreements and 50% of the billed invoice while Petrancosta testified about two agreements.

[9] This represents 50% of the billed invoice because Little Mountain pursued two claims at trial but is entitled only to reimbursement for costs associated with one—the Gas Key Agreement.