**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Little Mountain, LLC, | ) | CASE NO. 1:22 CV 1471 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| DR Guns, LLC, et al., | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff Little Mountain Precision, LLC's Motion to Enforce the Parties' Settlement Agreement. (Doc. 254.) This is a breach of contract case. For the reasons that follow, Little Mountain Precision, LLC's motion is DENIED.

**FACTS[1]**

On July 29, 2022, plaintiff Little Mountain Precision, LLC ("Little Mountain") brought this suit alleging that defendant DR Guns, LLC ("DRG") and certain related corporate entities and

---

[1] Only those facts pertinent to the present motion are included below. More complete facts and procedural history have been summarized at length in the Court's other memorandum of opinions and orders in this case.

individuals were liable for breaching four agreements entered between the parties. This case proceeded to trial, and, on September 27, 2024, the empaneled jury found that DRG breached one agreement. After this Court entered judgment, it resolved post-judgment motions and entered a final award to Little Mountain in the amount of $4,032,630.14, plus prejudgment and post-judgment interest.

Three weeks later, on June 26, 2025, Little Mountain filed the present Motion to Enforce the Parties' Settlement Agreement. The next day, DRG appealed several of this Court's decisions and the jury's verdict to the Sixth Circuit Court of Appeals. Little Mountain then filed a cross-appeal. Accordingly, this Court initially denied Little Mountain's Motion to Enforce the Parties' Settlement Agreement because the Court lacked jurisdiction to enforce an alleged settlement agreement that occurred after final judgment was entered in this case and while the case was on appeal.

On November 6, 2025, the Sixth Circuit Court of Appeals remanded the case "for the limited purpose of deciding whether the parties entered into a binding settlement agreement." (Doc. 268.)

**DISCUSSION**

To determine whether the parties entered into a binding settlement agreement, this Court looks to Ohio contract law. To form a contract under Ohio law, there must be an offer, acceptance, contractual capacity, consideration, and a meeting of the minds or mutual assent. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). As the party seeking to enforce a settlement agreement, Little Mountain bears the ultimate burden of proof. *See Savoy Hospitality, LLC v. 5839 Monroe St. Assocs., LLC*, 2015 WL 7572008, at *4 (Ohio Ct. App. Nov. 13, 2015) (citing *Cooper v. Pachell v. Haslage*, 756 N.E.2d 1248, 1250 (Ohio Ct. App. 2001) (further citations omitted)).

2

Little Mountain contends that, in early June 2025, the parties "reached a settlement agreement directly between their respective party representatives, which was thereafter confirmed by the parties' respective legal counsel." (Doc. 254, at 1.) Unfortunately for Little Mountain, neither the record nor the law supports its position.

First, according to Little Mountain's own recitation of the facts, there was never a binding agreement between John Habe and Stacy Rybacki. As Little Mountain points out, Ms. Rybacki offered certain terms for a settlement, which John Habe summarized in an email. Ms. Rybacki did not disagree with John Habe's summary of her terms. Thereafter, John Habe sent Ms. Rybacki an email summarizing what Little Mountain's Board of Directors was willing to accept as terms of a settlement. Notably, this email changed the material terms of Ms. Rybacki's offer.[2] Thus, this email amounted to a counteroffer. *Foster v. Ohio State Univ.*, 534 N.E.2d 1220, 1222 (Ohio Ct. App. 1987) ("[A] reply to an offer which purports to accept but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer."); *Sabatine BK Dev., LLC v. Fitzpatrick Enters., Inc.*, 85 N.E.3d 1127, 1133 (Ohio Ct. App. 2017) ("An acceptance which changes the terms of the contract does not create a binding contract because it constitutes a counteroffer.").[3] There is no evidence before this Court, nor does Little Mountain

---

[2] Specifically, Little Mountain's counteroffer included interest at 4.17% on the deferred payments totaling $2,300,000 and security for the deferred payments through the continuation of the appeal bond posted by DRG (the "Bond"). The difference between paying $2,300,000 over 12 months with no interest and with interest at 4.17% is $52,277.64.

[3] While never explicitly disputing the materiality of these changes, Little Mountain labels the changes as mere "caveats." Little Mountain can call the changes whatever it wants but any first-year law student could explain that a change in material terms amounts to a counteroffer—not acceptance. *See United States Steel Corp. v. Ohio Dept. of Transp.*, 577 N.E.2d 233, 237 (Ohio Ct. Cl. 1988) ("A 'counteroffer' or 'counterproposal' is defined as a response to an offer which is

contend, that Ms. Rybacki ever accepted Little Mountain's counteroffer. Accordingly, Ms. Rybacki never entered into a binding settlement agreement with Little Mountain on behalf of DRG.[4]

Perhaps recognizing that Ms. Rybacki never accepted Little Mountain's settlement offer, Little Mountain instead tries to paint DRG's former counsel, Ronald McMillan, as an agent able to bind DRG to a settlement with Little Mountain. While counsel can be vested with authority to negotiate settlements and bind clients to agreements reached, Mr. McMillan did not "negotiate" any settlement here.[5] *Cf. Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 142 N.E.3d 1267, 1287 (Ohio Ct. App. 2019) (" If a client authorizes its attorney to negotiate a settlement and the attorney negotiates a settlement within the scope of that authority, the client is bound by it."). This much is evidenced by Little Mountain's own summation that, when first contacted, Mr. McMillan stated he

---

conditional or introduces a new term." (citing *Schiff v. Schiff*, 45 N.E.2d 132, 136 (Ohio Ct. App. 1942))).

[4] In fact, Little Mountain acknowledges that Ms. Rybacki never responded to Little Mountain's counteroffer by instead arguing that her silence somehow amounted to acceptance. This Court is not convinced. Under Ohio law, there are very limited exceptions that allow silence to amount to acceptance and those exceptions do not apply here. *See Williams v. City of Dayton*, 2019 WL 5092410, at *3 (Ohio Ct. App. Oct. 11, 2019) ("Generally, silence in response to an offer will not constitute an acceptance of the offer." *Nilavar v. Osborn*, 137 Ohio App. 3d 469, 488, 738 N.E.2d 1271 (2d Dist.2000), citing *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St. 2d 147, 152, 375 N.E.2d 410 (1978). "However, silence may constitute an acceptance when the relation between the parties justifies the offeror's expectation of a reply to reject the offer." *Blazavich v. CAN Ins. Cos.*, 10th Dist. Franklin Nos. 97APE09-1282, 97APE09-1283, 1998 WL 353870, *5 (June 30, 1998)."). Here, Little Mountain has not pointed to any evidence that would make it reasonable for Little Mountain to believe that Ms. Ryback's total silence amounted to acceptance of a multi-million-dollar settlement agreement.

[5] Little Mountain bizarrely points to Mr. McMillan's involvement in earlier pretrial settlement negotiations with this Court as some evidence that he was involved with the at-issue negotiations. The juxtaposition only underscores that the limited and rudimentary negotiations here were between Ms. Rybacki and Mr. Habe. It never amounted to negotiations undertaken by counsel on behalf of their clients.

knew nothing about any settlement negotiations and needed Little Mountain's counsel (Mathew Doney) to send him the terms. (Doc. 254, at 4 ("Mr. McMillan was not aware of Ms. Rybacki's commitments, and asked Mr. Doney what the essential deal terms were.").)

At most then, Mr. Doney contacted Mr. McMillan "as a courtesy to ensure that [Mr. McMillan] was aware of the settlement agreement" and to verify that he correctly understood the terms that the parties themselves purportedly negotiated. (Doc. 255 ¶ 7 (Declaration of Attorney Mathew E. Doney, Esq.).) Even assuming Mr. McMillan confirmed the terms, he had no authority to bind DRG to those terms and Little Mountain does not point to any evidence or case law to the contrary.[6] (Doc. 269-1 ¶ ("I [, Stacy Rybacki,] never authorized DR[G's] attorney, Ronald M. McMillan, to engage in any settlement negotiations on behalf of DR[G]."); Doc. 269-2 ¶ 3 ("I [, Ronald M. McMillan,] was not authorized, and was never thereafter authorized, to engage in any settlement negotiations on behalf of DR[G].").)

But even if Mr. McMillan could legally bind DRG to a settlement with Little Mountain, the record before this Court—once again—does not evince any binding acceptance on the part of Mr. McMillan. That is because the terms Mr. Doney emailed to Mr. McMillan on June 6, 2025, and which Little Mountain claims Mr. McMillan accepted, are materially different than the final terms Mr. Doney emailed to Mr. McMillan on June 17, 2025.[7] There is no evidence in the record, nor

---

[6] To be sure, Little Mountain never claims it believed Mr. McMillan to have some agency authority on behalf of DRG besides the general ability of counsel to negotiate settlements on behalf of clients, which is inapplicable here.

[7] Specifically, the later offer included an "Agreed Amended Judgment Entry," language that "DRG shall be deemed to have prosecuted its appeal to a decision affirming the Judgment in its entirety, including but not limited though its post-trial motions," and provided that the Bond would remain in full force and effect as security for DRG's payment of the Judgment and that, if DRG were to

does Little Mountain contend, that Mr. McMillan or any agent of DRG ever accepted its last counteroffer.[8]

For all the aforementioned reasons, there is no binding settlement agreement between Little Mountain and DRG.

**CONCLUSION**

For all the aforementioned reasons, Little Mountain's Motion to Enforce the Parties' Settlement Agreement (Doc. 254) is DENIED.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge

Date: 3/5/26

---

default in making timely payments, Little Mountain could immediately commence execution by, among other things, submitting a claim against the Bond. (Doc. 255-7.)

[8] Because the parties do not dispute any material facts, but only the application of the facts to the law, the Courts finds there is no need for an evidentiary hearing. *See Hall v. City of Williamsburg*, 768 F. App'x 366, 379 (6th Cir. 2019) (evidentiary hearing not required where "no issue of fact is present" regarding whether there was a settlement agreement).

6